1

2

3                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
4                                 AT SEATTLE

5    JUDY NGO,

6                               Plaintiff,

7           v.                                    C22-0415 TSZ

8    LOUIS DeJOY, Postmaster General,             ORDER
     United States Postal Service,
9
                                Defendant.
10
11          THIS MATTER comes before the Court on a motion for summary judgment,

12   docket no. 13, brought by defendant Postmaster General Louis DeJoy, and a motion for

13   partial summary judgment, docket no. 14, brought by plaintiff Judy Ngo.  Having

14   reviewed all papers filed in support of, and in opposition to, the motions,[1] the Court

15   enters the following order.

     **Background**
16
            Plaintiff is a 50-year-old woman of Vietnamese (Asian) descent who has worked
17
     for the United States Postal Service ("USPS") for over twenty (20) years.  *See* Ngo Decl.
18
     at ¶¶ 1–3 (docket no. 19).  She was diagnosed in 2009 with Sjogren's syndrome, which
19
     weakens her immune system and allegedly caused hearing loss.  *Id.* at ¶¶ 6–7.  Plaintiff
20

21   _____

22   [1] Plaintiff's motion, docket no. 25, to strike excerpts of two deposition transcripts submitted in
     conjunction with defendant's reply, is DENIED.  The Court has considered plaintiff's surreply,
23   docket no. 25, and supplemental declaration, docket no. 26.

     ORDER - 1

1   sues Postmaster General DeJoy under the Family and Medical Leave Act ("FMLA"),

2   Title VII of the Civil Rights of 1964 ("Title VII"), and the Rehabilitation Act of 1973.

3   Plaintiff has pleaded the following causes of action:  (1) a claim for FMLA interference;

4   (2) a Title VII claim for retaliation; (3) a Title VII claim for discrimination on the basis of

5   disability,[2] race, and sex; (4) a Title VII claim for hostile work environment; and (5) a

6   failure to accommodate claim.[3]  Compl. at ¶¶ 6.1–6.21 (docket no. 1).

7           Plaintiff served as the Attendance Control Officer for the Seattle District of the

8   USPS from August 2019 until July 2021, when she transferred to Tampa, Florida after

9   learning that her position would be eliminated as part of a nationwide reduction in force.[4]

10  See Ngo Decl. at ¶¶ 4 & 54–55; see also Ex. 26 to Strong Decl. (docket no. 15-26).  In

11

_____

[2] Plaintiff's claim for discrimination on the basis of disability is not cognizable under Title VII, which prohibits disparate treatment on the basis of "race, color, religion, sex, or national origin," but not disability.  See 42 U.S.C. § 2000e-2(a).  Moreover, plaintiff has not provided evidence of a facially neutral employment practice that fell more harshly on individuals with disabilities.  See Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1175 (9th Cir. 1998) (explaining that a disparate-impact analysis applies when an employer disclaims any reliance on an employee's disability in taking an employment action); see also Raytheon Co. v. Hernandez, 540 U.S. 44, 52–53 (2003).  Thus, plaintiff's disability-discrimination claim will be treated as alleging solely a failure to accommodate.  See 42 U.S.C. § 12112(b)(5)(A) (defining "discriminate . . . on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.").

[3] In her operative pleading, plaintiff did not specify any statute under which she pursues her failure-to-accommodate claim, but the parties agree that the Rehabilitation Act explicitly applies to the USPS.  See 29 U.S.C. § 794(a); see also Pl.'s Mot. at 6–7 (docket no. 14); Def.'s Mot. at 18 & 21 (docket no. 13).

[4] Plaintiff's salary was protected for a two-year period following the relocation, and within that timeframe, she received a promotion to Manager of Distribution Operations in Miami, with a pay increase effective January 14, 2023.  Exs. 26 & 27 to Strong Decl. (docket nos. 15-26 & 15-27).  As a result, plaintiff no longer pursues any claim relating to the USPS's 2021 reorganization.  See Pl.'s Resp. at 15 (docket no. 18).

ORDER - 2

1    March 2020, in response to the coronavirus disease ("COVID") pandemic, the USPS

2    adopted a policy that allowed employees who were not "mission critical" to work

3    remotely.  Ex. 1 to Ngo Decl. (docket no. 19-1 at 2).  The telework policy was extended

4    multiple times, and it remained in place through at least November 16, 2020.  *See* *id.*

5    (docket no. 19-1 at 3–6).  Plaintiff teleworked from March until mid-September 2020.

6    *See* Ngo Decl. at ¶¶ 9 & 11–12.

7            On September 11, 2020, plaintiff and her supervisor Alexis Delgado spoke on the

8    phone, but what was discussed is in dispute.  According to plaintiff, Delgado directed

9    plaintiff to participate telephonically in an investigative interview to be conducted on

10   September 14, 2020.  Ngo Decl. at ¶¶ 16–17.  Plaintiff asserts that Delgado never said

11   she was required to appear in person for work on September 14.  *Id.*  In her deposition,

12   Delgado testified that she sent plaintiff "something" telling her that "she was expected in

13   the office" on September 14.  Delgado Dep. at 77:9-10, Ex. 36 to Strong Decl. (docket

14   no. 15-36).  In connection with the pending cross-motions, however, defendant has not

15   proffered the "something" mentioned by Delgado.

16           On September 14, 2020, Delgado conducted an investigative interview of plaintiff

17   via telephone.  Ngo Decl. at ¶ 17.  Delgado has testified that, because plaintiff "did not

18   show up at work," but did participate in the hour-long investigative interview, Delgado

19   deemed plaintiff on one hour of administrative leave and seven hours of leave without

20   pay ("LWOP") for the day.  Delgado Dep. at 76:17–77:17 (docket no. 15-36).  On the

21   following day, September 15, 2020, plaintiff applied for FMLA leave,  *see* Ngo Decl. at

22   ¶¶ 21–22, which was subsequently granted, and plaintiff was on FMLA leave from

23

September 15 through December 10, 2020.[5]  *See* Exs. 10 & 11 to Strong Decl. (docket nos. 15-10 & 15-11); *see also* Porcaro Dep. at 27:25–28:4, Ex. 38 to Strong Decl. (docket no. 15-38).  On September 30, 2020, Delgado issued a Letter of Warning to plaintiff, accusing her of unsatisfactory work performance.  Ex. 9 to Strong Decl. (docket no. 15-9).

In November 2020, plaintiff initiated a formal Equal Employment Opportunity ("EEO") proceeding.  Ex. S to Lim Decl. (docket no. 16-19).  She amended the EEO charge four times, and the final version alleged discrimination on the basis of race, color, religion, sex, national origin, or disability, retaliation, and a hostile work environment.  Ex. 30 to Strong Decl. (docket no. 15-30).  On November 24, 2020, a few weeks before her FMLA leave expired, plaintiff asked for, but was denied, annual leave for the period from December 15, 2020, through January 5, 2021.  Ex. 12 to Strong Decl. (docket no. 15-12).  When asked during her deposition why she denied plaintiff's annual leave request, Delgado answered, "[Plaintiff] had been off for three months on FMLA leave."  Delgado Dep. at 72:7–10 (docket no. 15-36).

Plaintiff asserts that, before December 15, 2020, she and Delgado spoke on the telephone, and that Delgado said "ok" when plaintiff indicated, in light of Delgado's

---

[5] Pursuant to the USPS's Employee and Labor Relations Manual ("ELM"), the relevant section of which was not submitted by the parties, but the web address for which was provided by defendant's counsel, *see* Strong Decl. at ¶ 29 (docket no. 15) (citing https://about.usps.com/manuals/elm/html/welcome.htm), "[a]bsences that qualify as FMLA leave may be charged as annual leave, sick leave, continuation of pay, or leave without pay, or a combination of these."  ELM § 515.42.  The parties have not indicated how plaintiff's FMLA leave for the period from September 15 to December 10, 2020, was treated or whether plaintiff was paid while on FMLA leave.

ORDER - 4

denial of her annual leave request, she would instead take sick leave.  *See* Ngo Decl. at

¶ 27.  When plaintiff did not physically appear for work on December 15, 2020, Delgado

signed a form deeming plaintiff absent without official leave ("AWOL").  Ex. 10 to Lim

Decl. (docket no. 20-6).  Plaintiff's leave status from December 16, 2020, through

January 7, 2021, is uncertain.[6]  The record is clear, however, that on January 8, 2021,

Delgado notified plaintiff that she was approved to telework, and plaintiff again began

working remotely.  Ngo Decl. at ¶ 33.

By letter dated February 4, 2021, Delgado told plaintiff that her "current approval

to telecommute ha[d] been rescinded" and directed plaintiff to report to the office on

February 8, 2021.  Ex. 15 to Strong Decl. (docket no. 15-15).  On February 18, 2021,

Delgado issued a Duty Status Letter.  Ex. 17 to Strong Decl. (docket no. 15-17).  The

Duty Status Letter (incorrectly) stated, "Currently you do not have sufficient work hours

available to provide you entitlement to the protections afforded by the FMLA."  *Id.*

Plaintiff had earlier, however, applied for and received notice that she was eligible for

FMLA leave.  *See* Ex. 22 to Strong Decl. (docket no. 15-22 at 3).  The Duty Status Letter

further instructed plaintiff to report telephonically for "an investigative interview specific

to the allegation that [her] absenteeism has become excessive in nature and that [she was]

AWOL from work on December 15, 2020, and September 14, 2020."  Ex. 17 to Strong

---

[6] Plaintiff alleges that she was coded as LWOP during this three-week period.  *See* Ngo Decl. at
¶¶ 29 & 58.  In contrast, in her deposition, Delgado implied that plaintiff was, in fact, on sick
leave, and not marked as LWOP or AWOL.  *See* Delgado Dep. at 73:15–23, 75:5–8, & 82:15–16
(docket no. 15-36).  Neither side has proffered any paystubs, time sheets, or leave records
indicating that plaintiff was not paid from December 16, 2020, to January 7, 2021, and the
parties should address in their trial briefs (i) plaintiff's leave status during this timeframe; and
(ii) whether plaintiff was paid for or alleges damages with respect to these dates.

ORDER - 5

1  Decl. (docket no. 15-17).  The Duty Status Letter closed with the following language:

2  "I am enclosing a resignation form.  In the event that you do not intend to continue your

3  employment, prompt submission of a resignation will protect your employment record

4  from a disciplinary removal."  *Id.*

5        On February 26, 2021, Delgado conducted another investigative interview of

6  plaintiff.  Ex. 8 to Lim Decl. (docket no. 20-4).  During the course of the interview,

7  Delgado and plaintiff disagreed about whether plaintiff had previously requested a

8  reasonable accommodation and whether Delgado had approved plaintiff's sick leave

9  request for December 2020 and January 2021.  *Id.* at ¶¶ 3, 6, 9, & 20.  On March 2, 2021,

10  plaintiff was notified that her additional FMLA leave request was approved for the period

11  from February 9, 2021, to May 9, 2021.  Ex. 22 to Strong Decl. (docket no. 15-22).

12        On April 23, 2021, after receiving COVID vaccines, plaintiff physically reported

13  to the work site.  Ngo Decl. at ¶ 50.  Upon her arrival, plaintiff learned that she could no

14  longer use the private office previously assigned to her.  *Id.* at ¶ 51.  In addition, Delgado

15  issued a Proposed Letter of Warning in Lieu of a 14-Day Suspension.  Ex. 14 to Strong

16  Decl. (docket no. 15-14).  The Proposed Letter of Warning charged plaintiff with being

17  AWOL on December 15, 2020.  *Id.*

18  **Discussion**

19  **A.**      **Summary Judgment Standard**

20        The Court shall grant summary judgment if no genuine dispute of material fact

21  exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

22  56(a).  The moving party bears the burden of demonstrating the absence of a genuine

23  dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To

ORDER - 6

1   survive a motion for summary judgment, the opposing party must present "affirmative

2   evidence," which "is to be believed" and from which all "justifiable inferences" are to be

3   favorably drawn.  _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 255–57 (1986).  When

4   the record, taken as a whole, could not, however, lead a rational trier of fact to find for

5   the non-moving party on matters as to which such party will bear the burden of proof at

6   trial, summary judgment is warranted.  _See_ _Matsushita Elec. Indus.  Co. v. Zenith Radio_

7   _Corp._, 475 U.S. 574, 587 (1986); _see also_ _Celotex_, 477 U.S. at 322–23.

8   **B.    Family and Medical Leave Act Claim (First Cause of Action)**

9        The FMLA prohibits employers from interfering with the exercise of FMLA

10  rights.  _See_ 29 U.S.C. § 2615(a).  An employer is precluded from considering the "taking

11  of FMLA leave as a negative factor in employment actions, such as hiring, promotions or

12  disciplinary actions."  29 C.F.R. § 825.220(c) .  To prove an FMLA interference claim, a

13  plaintiff must show, through direct and/or circumstantial evidence, that the exercise of

14  FMLA leave rights constituted a negative factor in an employment decision.  _Bachelder_

15  _v. Am. W. Airlines, Inc._, 259 F.3d 1112, 1125 (9th Cir. 2001).

16       Weeks before plaintiff exhausted her FMLA leave in 2020,[7] she requested annual

17  leave for the period from December 15, 2020, through January 7, 2021.  Plaintiff asserts

18  that Delgado denied her annual leave request because plaintiff had taken (or was in the

19  process of taking) three months of FMLA leave.  Plaintiff further contends that Delgado

20  knew plaintiff would instead take sick leave, but nevertheless deemed her AWOL for

21  _____

22  [7] The parties do not dispute that plaintiff took FMLA leave, and the Court therefore GRANTS
    the portion of plaintiff's motion for partial summary judgment seeking a ruling that she used or
23  requested FMLA leave.

ORDER - 7

1  December 15, 2020.  Plaintiff has presented a triable issue concerning whether Delgado's

2  conduct interfered with plaintiff's FMLA rights by attaching negative consequences to

3  her exercise of those rights.  *See* *Bachelder*, 259 F.3d at 1123–24.

4         Defendant seeks dismissal on the theory that plaintiff cannot establish an FMLA

5  interference claim because she was no longer eligible for FMLA leave when she was

6  marked as AWOL.  Defendant's reasoning runs contrary to the statute and the related

7  regulations and jurisprudence; the fact that an employee has temporarily run out of

8  FMLA leave time does not give an employer freedom to discipline the employee for

9  having exercised FMLA rights.  Defendant also argues that plaintiff cannot show a causal

10 connection between her exercise of FMLA rights and the letters issued in February and

11 April 2021.  Both letters, however, followed shortly after plaintiff took FMLA leave, and

12 whether plaintiff's use of FMLA leave played a role in Delgado's decision to issue the

13 letters constitutes a question of fact that cannot be decided in motion practice.

14        Defendant further contends that plaintiff's FMLA interference claim relating to the

15 letters should be dismissed because plaintiff cannot prove any damages.  Although

16 plaintiff appears to concede that the letters did not cause any economic loss, she aptly

17 asserts that, if she prevails on her FMLA interference claim that the letters were issued

18 because she took FMLA leave, she might be entitled to equitable relief, for example,

19 removal of the letters from her disciplinary records.  *See* Pl.'s Reply at 3 (docket no. 23);

20 *see also* 29 U.S.C. § 2617(a)(1)(B) (authorizing equitable relief).  Thus, with respect to

21 plaintiff's FMLA interference claim, defendant's motion for summary judgment is

22 DENIED, and plaintiff's First Cause of Action remains for trial.

23

1    **C.   Title VII Claims**

2        **1.     Retaliation (Second Cause of Action)**

3        Defendant moves to dismiss plaintiff's retaliation claim because it is not, as

4    pleaded, actionable under Title VII.  In her Second Cause of Action, plaintiff alleges that

5    "Defendant has retaliated against Plaintiff by disciplining her for taking FMLA leave and

6    requesting reasonable accommodations."  Compl. at ¶ 6.7.  Using FMLA leave and

7    seeking accommodation for a disability are not, however, protected by Title VII.  In

8    response to defendant's motion, plaintiff asserts that the requisite protected activity was

9    the filing of an EEO complaint, but plaintiff did not plead such claim.[8]  *See* *id.* at ¶¶ 6.5–

10   6.9.  Moreover, plaintiff has not proffered evidence to support such claim.[9]  Defendant's

11   motion for summary judgment on plaintiff's Title VII retaliation claim is GRANTED, the

12   Second Cause of Action for retaliation is DISMISSED, and plaintiff's motion for a ruling

13

14

_____

15   [8] Plaintiff contends that she gave defendant notice of her intent to rely on her EEO complaint in
16   alleging retaliation, citing her response to defendant's Interrogatory No. 8, which asked plaintiff
     to "describe in detail any and all efforts [she] made to complain about the alleged discrimination
     and/or harassment."  *See* Ex. 11 to Lim Decl. (docket no. 20-7).  Interrogatory No. 8 did not ask
17   plaintiff to identify the protected activity for which she alleges she was retaliated, and plaintiff's
     answer to Interrogatory No. 8 did not tell defendant anything more than what was stated in the
18   complaint in this matter.  *Compare* *id.* ("Plaintiff filed a formal complaint of Discrimination
     with USPS in November 2020.") *with* Compl. at ¶ 5.1 ("In November 2020, Plaintiff filed a
19   formal complaint of Discrimination with USPS.").  Plaintiff's assertion that her discovery
     responses fill the void in her complaint lacks merit.

20   [9] Plaintiff accuses Delgado of engaging in a pattern of retaliatory behavior relating to her EEO
21   complaint and its four amendments.  The record indicates that Delgado was interviewed by an
     EEO specialist on November 2, 2020, *before* plaintiff filed her EEO complaint.  *See* Ex. 9 to Lim
22   Decl. (docket no. 20-5 at 5).  Plaintiff asserts that Delgado was aware of her EEO complaint, *see*
     Pl.'s Resp. at 16 (docket no. 18), but she cites no evidence indicating that Delgado knew about
23   plaintiff's formal EEO complaint or any of the subsequent amendments.

1    that her filing of an EEO complaint was, as a matter of law, protected activity is DENIED

2    as moot.

3              **2.     Discrimination (Third Cause of Action)**

4              Notwithstanding the allegations outlined in her EEO complaint and her Third

5    Cause of Action, plaintiff now limits her Title VII discrimination claim to the theory that

6    Delgado revoked her telework privileges and disciplined her because of her race or

7    national origin.  *See* Pl.'s Resp. at 29 (docket no. 18).  Plaintiff contends that Delgado

8    allowed a Caucasian employee, Terry Barker, to work remotely during the same period

9    that plaintiff was directed to report to the physical worksite, and that Delgado targeted

10   another Asian employee, Alisa Masunaga, for discipline (termination) while teleworking.

11   *See id.*  Delgado testified that she treated Barker differently because she "didn't have

12   issues with Ms. Barker's productivity at all" and Barker provided the requisite "medical

13   documentation to the occupational health nurse administrator."  *See* Delgado Dep. at

14   126:6–10 (docket no. 15-36).

15             Plaintiff bears the burden of proving, but has not demonstrated a triable issue

16   concerning whether, the stated rationale for allowing Barker to continue teleworking

17   while forbidding plaintiff from doing so and firing Masunaga is pretextual.[10]  Plaintiff

18   _____

19   [10] Under Title VII, in the absence of direct evidence of discrimination, courts employ the three-
     part burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S.

20   792 (1973).  *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  At the
     summary judgment stage, the *McDonnell Douglas* standard requires a plaintiff alleging disparate

21   treatment to present a prima facie case by showing that he or she (i) is a member of a protected
     class; (ii) is qualified for the position at issue; (iii) was subjected to an adverse employment
     action; and (iv) was treated less favorably than a similarly-situated employee outside the

22   protected class.  *See*, *e.g.*, *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1012 (9th
     Cir. 2018).  If a plaintiff succeeds, the burden shifts to the employer to provide evidence of a

23   legitimate, nondiscriminatory reason for the challenged conduct.  *See id.*  The final burden rests

offers nothing more than hearsay indicating that Masunaga characterized Delgado as two-faced, which is not actionable under Title VII. _See_ Ngo Dep. at 71:7–10, Ex. 39 to Strong Decl. (docket no. 22-1); _see also_ Ngo Dep. at 80:12–18, Ex. 35 to Strong Decl. (docket no. 15-35) (plaintiff did not recall Delgado ever making a comment about her race). Defendant's motion for summary judgment on plaintiff's Title VII claim for discrimination on the basis of race, sex, and/or national origin is GRANTED, and the Third Cause of Action is DISMISSED.[11]

### 3.   Hostile Work Environment (Fourth Cause of Action)

For the same reason that plaintiff's Third Cause of Action for disparate treatment fails, her hostile work environment claim lacks merit. Plaintiff cites _Edwards-Yu v. DeJoy_, No. 22-36009, 2023 WL 8797506 (9th Cir. Dec. 20, 2023), but her reliance is misplaced because that case is factually distinguishable. In _Edwards-Yu_, a former postal worker offered evidence and corroboration that "her supervisors yelled and screamed at her on many occasions" and "made discriminatory statements based on [her] age and sex." _Id._ at 1. In contrast, in this matter, plaintiff has not presented any evidence of abusive conduct related to her "race, color, religion, sex, or national origin," _see_ 42

---

on the plaintiff to produce evidence that the asserted reason is a pretext for discrimination. _See id._ To establish pretext, a plaintiff must put forward "specific" evidence indicating that the employer's articulated nondiscriminatory reason is "unworthy of credence." _See Lindahl v. Air France_, 930 F.2d 1434, 1437–38 (9th Cir. 1991).

[11] Plaintiff seeks a ruling that, as a matter of law, she suffered an adverse employment action, but she frames her request in connection with her FMLA interference claim, as to which an adverse employment action is not an element. _See_ Pl.'s Mot. at 2 (docket no. 14). Given the dismissal of plaintiff's retaliation and discrimination claims, the portion of plaintiff's motion for partial summary judgment that asks the Court to conclude she was subjected to an adverse employment action within the meaning of Title VII is DENIED as moot.

1   U.S.C. § 2000e-2(a).  In response to defendant's motion for summary judgment, plaintiff

2   asserts that she was subjected to "a hostile work environment immediately [after] she

3   filed her EEO complaint."  Pl.'s Resp. at 29–30 (docket no. 18).  This allegation cannot

4   form the basis of a hostile work environment claim; it merely repeats plaintiff's

5   retaliation theory, which she did not plead in her complaint.  Defendant's motion for

6   summary judgment on plaintiff's hostile work environment claim is GRANTED, and the

7   Fourth Cause of Action is DISMISSED.

8   **D.   Rehabilitation Act Claim (Fifth Cause of Action)**

9        The Rehabilitation Act incorporates the standards for reasonable accommodation

10  outlined in the Americans with Disabilities Act of 1990 ("ADA"), 29 U.S.C. § 794(d), as

11  well as the ADA's definition of "disability," see 29 U.S.C. §§ 705(9)(B) & 705(20)(B).

12  Under the ADA, an individual has a disability if he or she (i) has "a physical or mental

13  impairment that substantially limits one or more major life activities," (ii) has "a record

14  of such an impairment," or (iii) is "regarded as having such an impairment."  42 U.S.C.

15  § 12102(1).  Major life activities include "hearing" and "the operation of a major bodily

16  function," for example, "functions of the immune system."  42 U.S.C. § 12102(2).

17       Plaintiff seeks a ruling that, as a matter of law, she is an individual with a

18  disability.  In response, defendant suggests a jury could find that plaintiff's health was not

19  substantially limiting in February 2021, when defendant contends plaintiff first requested

20  telework as an accommodation,[12] because she returned to the office in April "of her own

21  _____

22  [12] Defendant argues that the USPS was unaware of plaintiff's health reason for needing to work
    remotely until after Delgado engaged in the challenged conduct (i.e., coding plaintiff AWOL on
23  September 14 and December 15, 2020, requiring her to participate in investigative interviews,

ORDER - 12

1    volition."  See Def.'s Resp. at 10 (docket no. 17).  Defendant's argument ignores the crux

2    of plaintiff's claim and the medical evidence in the record.[13]  The record reflects that

3    plaintiff has Sjogren's disease, which has impaired her hearing and compromised her

4    immune system.  Ngo Decl. at ¶¶ 6–7; Ex. P to Lim Decl. (docket no. 16-16); Exs. 7 &

5    32 to Strong Decl. (docket nos. 15-7 & 15-32).  Plaintiff's immunocompromised status

6    did not change until April 2021, when she received COVID vaccines and was advised by

7    her physician that she could safely return to the work site; at that time, however, plaintiff

8    continued to have a substantially limiting hearing impairment.[14]  Plaintiff's motion for a

9

10

———————————————————

11   issuing various letters, etc.), but Delgado acknowledged in her deposition that, in August 2020,
     she was informed by the Occupational Health Nurse Administrator, who had received medical
12   records from plaintiff's doctor, that plaintiff "should be working from home."  See Delgado Dep.
     at 43:14–21, Ex. 36 to Strong Decl. (docket no. 15-36).

13   [13] Defendant discounts plaintiff's medical evidence, comparing it to a physician's note in Coons
     v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879 (9th Cir. 2004).  See Def.'s Resp. at 11 (docket
14   no. 17).  According to defendant, in Coons, the Ninth Circuit "affirmed summary judgment in
     the employer's favor on Coons's failure-to-accommodate claim, holding that the physician's note
15   did not create a genuine issue concerning the 'substantially limits' element."  Id. (emphasis in
     original).  Defendant has inaccurately summarized the Coons decision.  The plaintiff in Coons
16   "identified travel as the only major life activity that was limited by his impairments," which
     included abdominal distress, palpitations, heart pounding, chest pain, depression, and panic
17   disorder.  383 F.3d at 885.  The Coons Court concluded that the plaintiff was not disabled
     because (i) travel is not a major life activity; (ii) the plaintiff had not shown he was unable to
18   travel or had significant travel restrictions; (iii) the plaintiff had not provided any evidence of a
     history of impairment that substantially limits any major life activity; his only evidence, a letter
19   from his doctor, reflected merely that he had received treatment for various physical and mental
     impairments; and (iv) the plaintiff had not presented evidence that his employer regarded him as
20   disabled.  See id. at 885–86.  Coons does not support defendant's position.

21   [14] Defendant has not challenged plaintiff's assertions that her hearing loss is "profound" and that
     she wears hearing aids.  See Ngo Decl. at ¶ 6.  Moreover, defendant does not dispute that, when
22   plaintiff returned to the work site in April 2021, a private office was not made available to her.
     Defendant contends that the USPS was not required to provide plaintiff's preferred reasonable
23   accommodation for her hearing impairment, but fails to explain how providing a separate work-
     space would have posed an undue hardship on the USPS.  See 42 U.S.C. § 12112(b)(5)(A).

1   ruling that she was, at all relevant times, an individual with a disability[15] is GRANTED.

2   Whether the USPS denied a reasonable accommodation request made by plaintiff or had

3   a business justification for doing so involves factual questions that preclude summary

4   judgment.  _See_ 42 U.S.C. § 12112(b)(5)(A).  Plaintiff's Fifth Cause of Action for failure

5   to accommodate remains for trial.

6   **E.      Damages (Prayer for Relief)**

7           Defendant seeks summary judgment as to plaintiff's alleged economic damages.

8   Defendant asserts that plaintiff cannot seek reimbursement for periods when she was

9   treated as AWOL or LWOP because she was not on FMLA leave at the time.  _See_ Def.'s

10  Mot. at 26 (docket no. 13).  Defendant's argument lacks merit.  Plaintiff need not have

11  been on FMLA leave to assert that she lost wages when coded as AWOL or LWOP as a

12  result of FLMA interference or failure to reasonably accommodate her disability.[16]  With

13  regard to "claims of discrimination in compensation" brought under 29 U.S.C. § 794, the

14  Rehabilitation Act incorporates the remedies set forth in Section 706 of the Civil Rights

15  Act of 1964.  _See_ 29 U.S.C. § 794a(a)(2).  Section 706 provides, in relevant part, that

16  "[i]f the court finds that the respondent has intentionally engaged in or is intentionally

17  _____

18  [15] Plaintiff asks the Court to rule, as a matter of law, that the USPS had notice of plaintiff's
     "disability."  Although the record reflects that, by late August 2020, the USPS was aware
19  plaintiff has "Sjogren's, autoimmune disorders, and migraine headache[s]," Ex. 7 to Strong Decl.
     (docket no. 15-7), whether the USPS had notice of a "disability," _i.e._, "a physical or mental
20  impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A),
     is a question that must be reserved for trial.

21  [16] With regard to the wages lost when Delgado marked plaintiff AWOL on September 14, 2020,
22  plaintiff is unlikely to show that taking FMLA leave served as a factor in such decision because
     she did not apply for FMLA leave until the following day, September 15, 2020.  The failure-to-
     accommodate theory might, however, provide a basis for recovering the amounts not paid to
23  plaintiff for the work she virtually performed on September 14, 2020.

ORDER - 14

1   engaging in an unlawful employment practice charged in the complaint, the court may

2   . . . order such affirmative action as may be appropriate, which may include . . . back

3   pay." 42 U.S.C. § 2000e-5(g)(1).  Whether plaintiff can make the requisite showing that

4   the USPS intentionally engaged in an unlawful employment practice is a question for

5   trial.  Defendant's request to strike plaintiff's prayer for economic damages is DENIED.

6   **Conclusion**

7          For the foregoing reasons, the Court ORDERS:

8          (1)     Defendant's motion for summary judgment, docket no. 13, is GRANTED

9   in part and DENIED in part, as follows:

10                 (a)     Plaintiff's claims under Title VII for retaliation, discrimination,[17]

11         and hostile work environment, the Second, Third, and Fourth Causes of Action,

12         respectively, are DISMISSED; and

13                 (b)     Defendant's motion is otherwise DENIED, and plaintiff's First and

14         Fifth Causes of Action remain for trial.

15         (2)     Plaintiff's motion to strike, docket no. 25, is DENIED, and plaintiff's

16  motion for partial summary judgment, docket no. 14, is GRANTED in part and DENIED

17  in part, as follows:

18                 (a)     The Court rules, as a matter of law, that plaintiff was, at all relevant

19         times, an individual with a disability, and that plaintiff used or requested FMLA

20         leave; and

21  _____

22  [17] Plaintiff's disability-discrimination claim, which was erroneously pleaded under Title VII, is
    considered to be co-extensive with plaintiff's failure-to-accommodate claim, which is treated as

23  brought under the Rehabilitation Act.

ORDER - 15

1             (b)     Plaintiff's motion is otherwise DENIED.

2       (3)     The oral argument scheduled for February 15, 2024, at 10:00 a.m., which

3  the Court concludes would not be beneficial, is STRICKEN.

4       (4)     The Clerk is directed to send a copy of this Order to all counsel of record.

5     IT IS SO ORDERED.

6     Dated this 30th day of January, 2024.

7

8

9                       Thomas S. Zilly
                           United States District Judge

ORDER - 16